## JONES VS. HEILIGER.

BANK CHECKS. (1) *Liability of drawer to payee; how controlled.* (2) *Effect of holder's attempt to pay therewith his own debt to drawee.* (3) *Rights of drawee as to holder.* (4, 5) *Notice to drawer of nonpayment; diligence.* (6) *Protest not required.*

36     149
53 LRA 433n

1. If the liability of drawer to payee, which the law attaches to the giving of a check, can *ever* be controlled by evidence of a parol agreement, entered into at the time the check was given, that the payee should take it at his own risk as to the *solvency* of the drawee (a question not here decided), at least such liability can be thus controlled only upon an *express* and *distinct* agreement to that effect between the parties.
2. Where the holder of a check attempts to pay therewith a draft on which he is liable, held by the drawee, this is, in effect, merely an attempt to collect the check.

Jones vs. Heiliger.

3. The drawee, in such a case, is under no obligation *to the holder of the check*, to accept it in payment of such holder's liability.

4. Where the payee presented the check on the next business day after receiving it, and on the next succeeding day notified the drawer of its dishonor and of his liability thereon, this is *held* due diligence, in the absence of any proof that the drawer was injured by the delay; especially as it appears that when the check was given, the drawee had already suspended payment.

5. It will not be inferred that such delay in presentation and notice injured the drawer by causing a delay of legal proceedings on his part, where he appears not to have proceeded for the residue of his account with the drawee.

6. No *protest* for nonpayment of a check being necessary to fix the liability of the drawer, the fact that the check in this case was protested several days after presentment, and notice of dishonor given, is immaterial.

APPEAL from the Circuit Court for *Dane* County.

Action for the amount of a check drawn by the defendant on the Bank of Madison, for $80, in part payment of a note held by the plaintiff against the defendant, and also to recover $34.34 due the plaintiff on account. Answer, a general denial, and that the check, after having been certified at plaintiff's request, by the bank on which it was drawn, was taken by him, with a small sum in money, in full payment and discharge of the note, without any further liability of the defendant. The answer also alleged a tender of the amount of the account, and payment into court.

The court found, in substance, that on Saturday, September 27, 1873, defendant owed plaintiff about $82, for which plaintiff held defendant's note due October 2, 1873 ; that on September 27, defendant went to plaintiff's store and asked if he would take defendant's check on the Bank of Madison for $80, and the balance in cash, in payment of said note, and plaintiff said he would, in case defendant had sufficient money in said bank to pay the same; that defendant then went to the bank, and returned with a slip of paper showing that he had in the bank more than $80 ; that the check in suit was then executed,

and, at the request of plaintiff, defendant procured to be written across the face thereof, by the book keeper of said bank, the words "good when we resume. F. E. DEITRICH, B. K.," and returned it to the plaintiff, who received the same and about two dollars in money, in payment of the note, and surrendered it to defendant; that on Monday, September 29th, the Bank of Madison held for collection a draft drawn on the plaintiff for $100, and on the forenoon of that day the messenger of the bank presented said draft to plaintiff at his store for payment, and plaintiff gave said check and $20 in money to said messenger, who received the same and gave the said draft to the plaintiff; that during banking hours of the same day, the bank refused to pay said check, and the messenger returned it to plaintiff and demanded money to the amount of $80, and about four o'clock of that day plaintiff received back the check, and paid to the messenger $80 in money; that on September 30th or 31st, plaintiff notified defendant of the facts above stated, and that he must pay the check; that on October 1st, the check was again presented to the Bank of Madison, and, payment being refused, was protested for nonpayment, and defendant notified on the same day; that plaintiff had not returned nor offered to return said check to defendant, and no part of the same had been paid; that at the commencement of said action defendant owed plaintiff the further sum of $34.34 on account, which sum the defendant had paid into court; that defendant had made no tender of payment thereof, or of the costs, to the plaintiff, and the same remained wholly unpaid. No exceptions were taken to these findings. The court held, as conclusions of law, that plaintiff received said check, and the money paid at the same time, as and for full payment of said note; that the giving and receiving of said check had the effect of an assignment by the defendant to the plaintiff of $80 of defendant's funds deposited in said bank; that plaintiff took the check at his own risk, and without any recourse to defendant, and the latter was not liable to plaintiff on account of said check; but that plaintiff was en-

titled to judgment for the amount due on said account.    Judgment accordingly; from which plaintiff appealed.

*Alden S. Sanborn,* for appellant:

1. There is no evidence to support the conclusion that plaintiff received the check in payment of the note.    2. The evidence shows that the plaintiff used due diligence to fix the liability of the maker of the check.    3. The drawer of a check is not a *surety,* but the principal debtor, and he will not be discharged from liability unless he has suffered loss by the laches of the holder, of which there is no evidence in this case.

*Francis Massing,* for respondent:

1. The taking of the check was *prima facie* evidence of the payment.    *Mehlberg v. Tisher,* 24 Wis., 607, and cases cited. So that if the testimony were evenly balanced, the possession of the note would decide the case.    *Doty v. Janes,* 28 Wis., 319.    2. But the plaintiff could not recover even on the theory that the check was taken as a means of payment only.    In that case it was the duty of the plaintiff to present it, at furthest, the next business day.    The following cases are authorities that the plaintiff's laches will prevent a recovery:    *Meads v. Merchants' Bank of Albany,* 25 N. Y., 143; *Strong v. King,* 35 Ill., 9; *Mehlberg v. Tisher,* above cited.

RYAN, C. J.    We are unable to agree with the learned judge of the circuit court in his finding, that the appellant took the respondent's check on the Bank of Madison at the appellant's risk and without recourse to the respondent.    We need not consider the question, whether a parol agreement at the time the check was given, was admissible to control the legal liability of the drawer to the holder of the check (Addison on Con., 158; Edwards on Bills, 147, 313), because no such agreement appears to have been made.    There is no proof tending to show such an agreement.    It may be inferred, indeed, that the respondent thought that, his note being paid, his liability to the appellant ceased, and that he would not be

liable on his check. But that was his mere mistake of law. When he gave his check, he assumed all the liability which the law attaches to it. If parol evidence would be competent to vary such liability, it could only be upon express and distinct agreement to that effect between the parties. Here it seems very plain that no such agreement was made.

The attempt of the appellant to pay his liability at the bank with the respondent's check, was an attempt to collect the check, and has no other significance in the case. As between the appellant and the bank, the appellant had no right to apply the check to the payment of the draft upon him, and the bank was not obliged to accept it. Story on Bills, § 419.

Excluding Sunday, the appellant presented the check for payment the day after he received it, and on the succeeding day notified the respondent of its dishonor and of his liability over. Under the circumstances, we think, that this was due diligence, within all the authorities, unless it should appear that the respondent was injured by the delay. Byles, 13; Story on Bills, §§ 231, 382; Edwards on Bills, 397. And the more easily and surely, because it appears that, when the check was drawn, the bank had already suspended payment. Had the bank suspended while the appellant held the check, it might have been otherwise.

No injury to the respondent appears. The only injury possible to him, by any delay of the appellant, which we can see, would be a suspense of legal proceedings against the bank. Such an injury cannot be inferred, when he does not appear to have proceeded for the residue of his account with the bank.

The subsequent protest of the check does not enter into the question. No protest was necessary. Story on Bills, § 281; Edwards on Bills, 50.

The judgment of the court below for the account seems to have been correct. The entire judgment must, therefore, be reversed, and the cause remanded to the court below with

directions to enter the proper judgment for the appellant on the account and on the check.

*By the Court.* — It is so ordered.