LAWSON McINTYRE, RESPONDENT, v. LIVESTOCK SHIPPING ASSOCIATION ET AL., APPELLANTS.*

Kansas City Court of Appeals. November 26, 1928.

*Corpus Juris-Cyc References: Appeal and Error, 4CJ, section 2853, p. 876, n. 78; Associations, 5CJ, section 122, p. 1371, n. 36; Banks and Banking, 7CJ, section 268, p. 610, n. 16; Bills and Notes, 8CJ, section 752, p. 540, n. 20.

*A. F. Harvey* and *Cook & Cummins* for respondent.

*Wright & Ford* for appellants.

ARNOLD, J.—This is an action to recover on a dishonored check. Plaintiff is a farmer residing about five miles from Burlington Junction and about the same distance from the town of Elmo, both in Nodaway county, Missouri. His banking connections were with the Farmers & Merchants Bank at Elmo, and he received his mail on rural route out of Burlington Junction. Defendant association is a voluntary livestock shipping association, organized not for profit, with headquarters at Burlington Junction. Its business, in charge of one C. H. Miller, consisted in shipping livestock to market for its members and others. For its service a small fee was charged to cover expenses. Plaintiff was not a member of the association and was not interested in it. The manager of defendant knew plaintiff had hogs ready for market and solicited the shipment thereof.

It appeals that after some negotiations it was agreed that defendant association might ship the hogs and, pursuant to such agreement, on May 17, 1926, fifty-eight head of hogs belonging to plaintiff were shipped to market and sold, the proceeds thereof being returned to defendant association and by it deposited to its credit with the Northwestern Bank of Burlington Junction, the bank used by said association for its banking facilities. A shipping bill and check for $1297.50 were sent to plaintiff by mail by the manager Miller, in payment for the hogs. Said check was dated May 18, 1926, and drawn on the Northwestern Bank of Burlington Junction and signed by C. H. Miller, manager of defendant association. The shipping bill which accompanied the check showed that plaintiff had been charged freight, yardage, feed and commission. There were also two items with which plaintiff was charged which went to the association, to-wit, "home expense, $9.62" and "sinking fund, $4.80." The check involved in this litigation represents the net returns to plaintiff on the shipment.

The check went out from Burlington Junction on May 19, 1926, at about eleven A. M., rural delivery, was delivered at plaintiff's home and received by him on that day. The following day plaintiff deposited the check to his credit in the Farmers & Merchants Bank at Elmo and the evidence shows the check was handled in the usual way. On the day of its deposit the bank at Elmo mailed it to its correspondent, the First National Bank at Maryville, and in due course this bank

sent it to its correspondent, the First National Bank of St. Joseph, Missouri, which sent it to the First National Bank at Burlington Junction where it was received on Monday, May 24, 1926. In the afternoon of that day the last-named bank presented the check, together with a number of others amounting in all to about $10,000, to the drawee bank at Burlington Junction and demanded cash for the whole amount. No separate presentation was made of plaintiff's check. Payment was refused by the drawee bank for lack of funds and on the following morning the Northwestern Bank of Burlington Junction failed to open its doors.

At the time of the presentation, as above stated, defendant had on deposit and to its credit, the sum of $1618.83, in the Northwestern Bank and the bank had in its vaults at the time more than $2500 in cash. It is shown in evidence that defendants filed a claim against the defunct bank for $1618.63, the amount on deposit to the credit of the association on the date the bank closed its doors, and said claim was allowed. The by-laws of defendant association were introduced in evidence. Plaintiff brought this action against defendant association and certain individuals who were officers and members thereof to recover the amount of the check involved herein. After the trial was in progress, the parties agreed to waive a jury, the jury was discharged and the trial proceeded to the court alone. No instructions or declarations of law were asked or given. Judgment was for plaintiff for the full amount claimed. A motion for new trial was ineffectual and defendants have appealed.

The petition alleges delivery to defendant association of the hogs in question, that the hogs were sold for the net price of $1297.50 and that plaintiff has never received this amount and asks judgment therefor. Defendant filed a demurrer to the petition upon the grounds, *first*, that there is a defect of parties defendant, in that it appears on the face of the petition that there are other necessary parties defendant not named therein; *second*, that the petition fails to state facts sufficient to constitute a cause of action against the defendants.

The demurrer was overruled and defendants answered, making general denial of all allegations of the petition after admitting they were members of a voluntary association organized for the purpose of shipping livestock to market for themselves and other persons. The answer further alleges that said Livestock Shipping Association was a voluntary association, organized for the purpose of shipping livestock to market for themselves and other persons; that it was organized purely for the purpose of convenience and accommodation and received no profit from its transactions and made no charge for services other than such as were sufficient to cover expenses of loading and shipping; that its by-laws provided, and it was agreed between the

association and plaintiff that the association should receive stock owned by plaintiff and ship the said stock to the market at St. Joseph, Missouri, receive the returns therefor, and make such disposition thereof as plaintiff might direct; that in pursuance of this agreement and understanding the shipping association, on May 17, 1926, did receive for shipment fifty-eight head of hogs, the property of plaintiff, together with hogs of other parties in the vicinity of Burlington Junction, the whole number so received being sufficient to make a carload; that the hogs were shipped to St. Joseph, Missouri, and there sold to the Farmers Union Livestock Commission Company and by that company sold and the returns sent to the defendant association and received by it on the morning of May 19, 1926; that it was agreed between plaintiff and defendant association that the latter should divide the receipts among the various shippers *pro rata;* that a check should be mailed to plaintiff for his share; that it was agreed and understood the returns should be sent to the Northwestern Bank of Burlington Junction, Missouri, and that the check in payment for plaintiff's share should be drawn on said bank; that pursuant to such agreement, defendant association, on the morning of May 19, 1926, mailed a check to plaintiff for his share of the proceeds; that said check was received by plaintiff on the morning of the same day; that at said time defendant association had sufficient funds in the drawee bank to pay said check on presentation, and that said funds still remain in said bank; that the said bank remained open for business and the check would have been paid upon presentation at any time from and after the morning of May 19, 1926, until the close of banking hours on May 24, 1926; that no notice of dishonor was given defendants or any of them, or to anyone belonging to the defendant association; that the drawee bank suspended payment on the morning of May 25, 1926, and that it is totally insolvent; that defendants will suffer loss equal to the full face value of said check if compelled to make same good to plaintiff. The answer further alleges that if plaintiff has suffered any injury the same is due to his own carelessness and negligence.

The reply is a general denial. The first point urged on appeal is that all members of the voluntary association must be made parties defendant and in support of this contention cite the case of Bentley v. Hurley, 299 S. W. 604. On examination we find the cited case not in point for the reason that it arose upon a contest between members of the association involved and not, as here, between the association and a third party. Therefore it is not in point.

Defedants also cite Wiehtuechter v. Miller, 276 Mo. 322, 208 S. W. 39. This case holds only that the real party in interest must bring the action. There is no showing in the case at bar that McIntyre is

not the real party in interest. Therefore the ruling in that case does not apply. The case of Moore v. Stemmons, 119 Mo. App. 162, 95 S. W. 313, also cited, was decided prior to the enactment of the present statute (sec. 1186, R. S. 1919) defining the manner of service of summons on a voluntary association. The Moore case dealt only with that question. As no question is raised of the validity of the service herein, the case is not in point. In our opinion the cases of Bruns v. Drivers Union, etc., 242 S. W. 419; Williams v. Express Co., 195 Mo. App. 362, 191 S. W. 1087, and O'Neal v. Brotherhood, 261 S. W. 128, control the present case and we accordingly rule against defendants on the point urged.

It is next contended plaintiff was negligent in presenting his check for payment. In Maronde v. Vollenweider, 279 S. W. 774, where a check was received on October 21 and presented for payment October 26, it was held there was no negligent delay; that the mere fact that a check was sent on a long and circuitous route was not evidence of bad faith or negligence. In the present case the bank of first deposit was the agent of plaintiff and on the day the check was received said bank sent it to its correspondent bank at Maryville, Missouri. Under the ruling in the Maronde case if the bank was not negligent the plaintiff was not. In the case last cited, as in the case at bar, the facts are that the check was handled as all other checks of similar origin were handled. [Winchester Milling Co. v. Bank, 111 S. W. 248.] Defendants cite Holmes v. Roe, 62 Mich. 199. In that case the manner of conducting the business through the clearing house is held to have no bearing. Our courts do not follow that rule; the doctrine of the ordinary course of business is recognized here (Maxwell v. Dunham, 297 S. W. 94, 98; First National Bank v. Korn, 179 S. W. 721) and we follow these rulings.

Appellant contends the First National Bank of Burlington Junction was negligent in waiting until four o'clock in the afternoon of the day on which the check was received before presenting it for payment, and that such negligence should be imputed to plaintiff. We think the presentation of a check on the same day in which it is received, so long as it is during banking hours of that day cannot be considered negligence as a matter of law.

It is also contended that it was the duty of the First National Bank of Burlington Junction to present plaintiff's check separately and demand payment thereon. No authorities are cited in support of this position. The reasonable conclusion is it would not be necessary for a bank, when presenting a list of checks for payment, to present each check separately and demand payment thereon. Such procedure, in our opinion, would be a little short of ridiculous. If there were any checks in the list of those presented which the Northwestern Bank would pay, it could have selected such from the list offered.

Still pursuing the question of negligence on the part of plaintiff in the presentation of his check on the drawee bank for payment, defendants, in their motion for rehearing, again call attention to the opinion of the Springfield Court of Appeals in Koch v. Loan & Realty Co., 286 S. W. 732, wherein it is held that where a check was received by payee in the city or town wherein the bank on which it was drawn is located, it must be presented either on the day it is received or on the following week day. On casual reading, the opinion cited would seem to be squarely in point, but not so on analysis. The essential facts of the two cases differ sharply. In the Koch case the plaintiff, living in Joplin, Missouri, was in Springfield, Missouri, and in the course of a settlement with defendant received a check drawn on a Springfield bank. He put the check in his pocket and took it to Joplin with him. On examining the check he decided it was short approximately eleven dollars of being the correct amount. Thereupon he returned the check by mail to the drawer, calling attention to the error; the drawer returned the check explaining its correctness as to amount. The drawee then deposited it in his bank in Joplin which forwarded it to its Springfield correspondent for presentation, but when so presented, the drawee bank had suspended payment. The opinion held there was fatal delay in presentation, owing to drawee's negligence in holding the check. .

In the case at bar the check was deposited for credit by McIntyre in the Bank at Elmo on the day following its receipt by him through the mails. Defendants insist there is an analogy between the two cases in this: That defendants' agent Miller testified he saw plaintiff on the street in Burlington Junction on May 19, 1926, the day the check was mailed to him: that he asked McIntyre if he had received the check and he said he had it then in his pocket. In regard to this conversation and whether he was in Burlington Junction in the afternoon of May 19th, plaintiff testified, "I think not," and then said he had no recollection of being there at that time, nor of the conversation testified to by Miller. As to whether or not this was intended to be a positive denial of Miller's testimony on this point was for the court sitting as a jury. The court seems to have accepted plaintiff's testimony as a refutation of Miller's statement and we shall not disturb this finding. [10 R. C. L. 1012, sec. 203; Stotler v. Railroad, 200 Mo. 107, 138.] Defendants contend that the evidence shows McIntyre was in Burlington Junction within two hours after receiving the check drawn on a bank in that town and that this was sufficient evidence to bring the case within the rule that where a check is delivered to the payee in the same town where the drawee bank is located, the check must be presented not later than the following week day. We do not accept this as sound reasoning.

In Maronde v. Vollenweider, supra, which is also an opinion by the Springfield Court of Appeals and by the same learned judge as the Koch case above referred to, it is held that failure to mail a check immediately to the bank on which it is drawn was not negligence. Under sec. 972, R. S. 1919, the payee of the check who forwarded it to a bank for collection where it went through regular clearing channels was held not to have been remiss in any particular. In applying the rules just stated to the case at bar, we are unable to say that plaintiff was guilty of negligence as a matter of law. We find no conflict in the holdings of the Springfield Court of Appeals in the cases of Koch and Maronde.

There being no reversible error of record, the judgment is affirmed. *Bland, J.*, concurs; *Trimble, P. J.*, absent.